No. 83-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

JAMES D. HOLMES,

        Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Valley,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Stephen Moses argued, Billings,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Judy Browning argued, Asst. Atty. General, Helena
David Nielsen, County Attorney, Glasgow, Montana

Submitted:    September 12, 1983

Decided:    December 13, 1983

Filed: DEC 13 1983

*Ethel M. Harrison*

—————————————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from certain denied motions, convictions and the sentencing of appellant James D. Holmes on two counts of felony theft from the District Court of the Seventeenth Judicial District, Valley County, Montana.

The facts in this case are set forth as follows. James D. Holmes served as president of Valley Industrial Park Inc. (V.I.P.), a nonprofit corporation set up to operate and maintain the former Glasgow Air Force Base. On April 9, 1981, Holmes traveled with Brenda Hill by charter airplane to Great Falls. In Great Falls, at Eklund's Appliance and T.V., Holmes negotiatied with Harvey Barvyo, a salesman, to obtain 37, 19-inch television sets for V.I.P. Included in this purchase, but not reflected on the invoice, was a "Sony" large screen television. The purchase reflected a higher average price for each individual set so as to disguise the presence of the "Sony."

On April 10, 1981, Holmes went to Big Sky T.V. in Glasgow, Montana, and purchased more television sets. He included in this purchase a trash compactor and a dishwasher.

The large screen "Sony" television was shipped with labeling indicating it was to be picked up by Holmes, and in fact Mrs. Holmes received the television. Holmes ordered the trash compactor and dishwasher to be delivered to a vacant house next to the Holmes' house. Holmes asserts that the "Sony" television and appliances purchased in April were for an executive home (the vacant house) located next to the Holmes' house.

In July of 1981, V.I.P. terminated Holmes' employment. He then went on vacation and returned only very briefly to his residence in Glasgow. He left the details of packing and moving to his wife. On August 18, 1981, a moving company transported the Holmes' personal possessions from the Glasgow residence to a storage warehouse in Billings. Testimony indicates Mrs. Holmes directed the mover to include the items in question with their personal property, thereby co-mingling. These items ended up in storage in Billings with the rest of the Holmes' property. The Holmes' then traveled to Georgia to live.

In September, authorities initiated an investigation and discovered this V.I.P. property with Holmes' property in Billings. A special investigator, Tom Adams, traveled to Georgia and interviewed Holmes at his living quarters. Following the interview, Holmes claimed he first discovered the V.I.P. property co-mingled with his by examining a bill of lading prepared by the movers and signed by his wife. The Valley County Attorney's office then charged Holmes with four counts of felony theft. The court later dismissed two of the counts.

During the period leading up to Holmes' dismissal from V.I.P., much publicity centered around Holmes and the activities at V.I.P. Around that time, government officials considered using V.I.P. for a Cuban refugee camp. This created a great controversy in Glasgow and made Holmes a very controversial figure. Many newspapers carried related stories, and every juror during voir dire stated they knew of V.I.P and Holmes.

At the trial following voir dire, one of the selected

jurors heard a radio news account of the case and then conversed with the newscaster at a local store. Following testimony by the juror and the newscaster, the court dismissed her from the jury. Thereafter, there remained no alternate juror.

Then, at the end of the trial, before the jury reached a verdict, a third person told the jury while they were seated for lunch, "I don't care what you think, he's guilty." The person was charged with improper influence on an official and forfeited bond. Due to this incident, the court polled the jury prior to announcing the verdict, to determine whether they made their decision without external pressures or influences. They answered affirmatively.

Appellant presents many issues for review:

(1)  Did the court err in denying defendant's motion for a change of venue?

(2)  Did the court err in denying a new trial on the grounds of jury tampering?

(3)  Can the court properly sentence on the two counts of felony theft?

(4)  Was there sufficient evidence to support the conviction?

(5)  Did the court err in denying motions to dismiss, based on improper information?

(6)  Did the court err in giving and omitting certain jury instructions?

(7)  Did the court err by refusing to disqualify itself for sentencing?

(8)  Did the court violate rules of evidence of the sentencing hearing?

(9)  Was the sentence excessive?

(10)  Did the court err in not suppressing the defendant's statement to an investigating special detective due to the lack of a Miranda warning?

Appellant first contends the court erred in denying a change of venue.  This Court in State v. Link (Mont. 1981), 640 P.2d 436, 38 St.Rep. 982, states:

> "[T]he rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. People v. Berry (1967), 37 Ill.2d 329, 226 N.E.2d 591, 592-593."

In State v. Paisley (Mont. 1983), 663 P.2d 322, 324, 40 St.Rep. 763, 765, we stated:

> "Absent abuse of discretion, the District Court's ruling on a motion for change of venue will be affirmed.  State ex rel. Coburn v. Bennett (1982), _____ Mont._____, _____, 655 P.2d 502, 506, 39 St.Rep. 2300, 2306.
>
> ". . .
>
> "When prejudicial pretrial publicity is alleged, the publicity must be inflammatory and create a reasonable apprehension that a fair trial is not possible before the motion will be granted.  State v. Richardson (1982), _____ Mont._____, _____, 647 P.2d 830, 832, 39 St.Rep. 1201, 1203-04."

Appellants point to some newspaper articles that they consider inflammatory and prejudicial.  The articles focused on the attempt to bring Cuban refugees to the area, and mention criticism of Holmes, but none regarding the alleged criminal activities.  Because of his position, he became a notorious and controversial figure.  Though prejudice and inflammation could arise from incidents and transactions

-5-

concerning an accused unrelated to the charges at hand, such is not the case here.

During extensive voir dire, all the jurors claimed they had heard of Holmes, but only two people were removed because they expressed prejudice against him. The court removed one more juror after empanelment, but not due to any preconceived prejudice acquired prior to trial. We find no abuse of court's discretion in this case. Transcripts indicate the District Court used many precautions to insure fairness and therefore properly denied appellant's motion for a change of venue.

Appellant's second issue involves the incident that occurred while the jury was at lunch. Appellant contends that the comment made by a third party to the jury constituted jury tampering. We disagree.

Appellant cites Mattox v. U.S. (1892), 146 U.S. 140, 36 L.Ed 917, 13 S.Ct. 50. Even through jurors signed affidavits stating they were not influenced, the U.S. Supreme Court found jury tampering existed when a bailiff made statements to the jurors indicating the defendant was guilty. The jury also obtained newspaper articles expressing the defendant was guilty. That Court held, "Private communications, possibly prejudicial, between jurors and third person, or witnesses, or the officer in charge, are absolutely forbidden and invalidate the verdict, at least unless their harmlessness is made to appear."

In Parker v. Gladden (1966), 385 U.S. 363, 17 L.Ed.2d 420, 87 S.Ct. 468, and Sheppard v. Maxwell (1966), 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507, cited by appellant, the U.S. Supreme Court also found jury tampering. Common to

these cases was the fact that the bailiff made improper comments to the jury regarding the guilt of the defendant.

This Court addressed this problem in State v. Eagen (1978), 178 Mont. 67, 582 P.2d 1195. In that case a juror approached a third party in a bar and expressed his opinion that the defendant was guilty and half the jurors were friends of the victim. We stated the rule, "that if jury misconduct is shown tending to injure the defendant, prejudice to the defendant is presumed; however, the presumption is not absolute and may be rebutted by the use of the jurors to show facts which prove that prejudice did not or could not exist. . . " (citations omitted) In State v. Baugh (1977), 174 Mont. 456, 571 P.2d 779, a juror viewed a video-tape of the exhumation of the victim's body. The court dismissed her from the jury and polled the remaining jurors regarding any comments she may have made that might have prejudiced them. This Court found no reversible error prejudicing of the jury. These cases suggest that while a presumption of prejudice exists when something improper occurs with a jury, the court can rebut. the presumption by taking corrective steps and polling the jury as to whether they were influenced by anything other than the evidence introduced at trial. That is not to say that this is sufficient in all cases to rebut: the presumption. The improper activity must be harmless or rendered harmless in order to provide the defendant a fair trial.

In instant case, at least two jurors overheard comments made by a third party while they sat at a table during a lunch break. The third party made a comment, "I don't care what you think, he's guilty." He was coming out

of a bar and was joking when he made the comment. The court polled the jury prior to their announcing the verdict if they were influenced by anything other than the evidence in reaching their decision. Each juror answered that he or she made his or her decision solely on the evidence presented in court and was not influenced by anything outside of the proceedings. We therefore find no prejudice occurred sufficient to be cause for a new trial.

Appellant next contends the court erred in not granting a motion to dismiss one count based upon duplicity of the information. Appellant contends the information stated only one offense except they mentioned different items in the theft. Therefore, the information should have been consolidated and only one count of theft charged, because the two counts involved only one transaction.

Section 46-11-404(1), MCA, permits the court to join charges. Section 46-11-502, MCA, permits prosecution when conduct constitutes more than one offense, but requires conviction of no more than one offense if:

> "(1) one offense is included in the other;
> (2) one offense consists only of a conspiracy or other form of preparation to commit the other;
> (3) inconsistent findings of fact are required to establish the commission of the offenses;
> (4) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
> (5) the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of such conduct constitute separate offenses."

In Parker v. Crist (Mont. 1980), 621 P.2d 484, 37

St.Rep. 2048, this Court, citing above statutes, expressly permitted charging seven counts of robbery arising out of the same incident.

In the instant case, the state prosecuted the defendant on two counts of theft. The first count arose over the taking of a big-screen T.V., the second count occurred when the defendant took control over a few appliances. While all of these items were loaded on a moving van, at the same time to complete the execution of unauthorized control over them, they were acquired through different schemes and thereby constituted different crimes. We therefore find the court properly found appellant guilty and sentenced him for two counts of theft.

Appellant claims the State failed to prove its case. Specifically the State failed to introduce any evidence that defendant or his wife exerted unauthorized control over the property. Further, a fatal variance existed between what the State charged and what they proved, and the information lacked sufficient facts regarding the time and place of the crime.

In State v. Godsey (Mont. 1982), 656 P.2d 811, 39 St.Rep. 2354, we reiterate the standard of review to be, "after viewing the evidence in the light most favorable to prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." We find sufficient evidence to support this verdict.

Evidence demonstrated that appellant, by virtue of his position, could disguise the purchase of a big-screen T.V. and other appliances. He controlled the V.I.P. operation which enabled him to shuffle the property around,

-9-

until it was finally loaded into a moving van with all of his other property. He precluded V.I.P. from knowing of the existence or whereabouts of the property he ordered it to purchase. We therefore find sufficient evidence to support the verdict.

Appellant argues there exists a fatal variance between what he was charged with and what the State presented. The information stated the theft occurred on or about August 18, 1981, yet the State's case also involved transactions that occurred in April of 1981. We find the appellant was convicted upon proper information.

Section 46-11-401(1)(c)(iv), MCA, provides the charge shall state the time and place of the offense as can be done. In State v. Dunn (1970), 155 Mont. 319, 327, 472 P.2d 288, 294, we stated the test of the sufficiency of the language to be, "Is the defendant apprised of the charges brought against him so as to prevent surprise? . . . We see no reason why the contents of the supporting affidavits filed in the case in the presence of the defendant and his counsel . . . cannot be used in determining the meaning of the language contained in the information."

The State contended that on or about August 18, 1981, the defendant committed theft. In the attached affidavit, the State alleged that the appellant set into motion the process of exerting unauthorized control over the property in April of 1981; however, the act was not completed until August of 1981. Clearly the State apprised the defendant of the charges and facts they would prove at trial. We find no defect in the information or any variance between what was charged and what the State presented at trial.

Appellant next objects to the giving and denying of certain jury instructions.

> "On appeal, we review the instructions as a whole. State v. Farnes (1976), 171 Mont. 368, 558 P.2d 472. It is impossible to deliver the whole of the law in any one instruction, and for that reason, all instructions are considered as a whole and if they fairly tender the case to a jury, the fact that one instruction standing alone is not as full or accurate as it might be is not reversible error. State v. Caryl (1975), 168 Mont. 414, 543 P.2d 389."

State v. Coleman (1979), 185 Mont. 299, 397, 605 P.2d 1000, 1053-1054.

In instant case the instructions delivered fairly tendered the case to the jury, we therefore find no prejudicial error occurred in the jury instructions.

The next issue we will consider is, did the court err in refusing to disqualify itself in the sentencing proceeding? Appellant moved to disqualify Judge Sorte because he signed orders for investigative subpoenas and orders for seizure during the period of presentence investigation. He made those orders following a review of affidavits submitted by the Valley County attorney. The county attorney was investigating another criminal case involving appellant and sought the necessary orders.

In instant case, nothing suggests that Judge Sorte sought additional information or the State sought to influence his sentencing determination by presenting affidavits in support of orders in order to facilitate an investigation. Nothing indicates the court relied on this material to influence its decision. In fact the court specifically stated it would not consider any information received connected with the other investigation for

-11-

sentencing purposes. In State v. Olson (Mont. 1980), 614 P.2d 1061, 37 St.Rep. 1313, this Court found proper sentencing when the court was exposed to improper matters but refused to consider them.

In instant case, we find no prejudiced error in sentencing when the court refused to consider matters involving investigations into other alleged crimes committed by appellant.

Appellant asserts the court improperly conducted the sentencing hearing by permitting relaxed rules of evidence.

In State v. Lamere (Mont. 1983), 658 P.2d 376, 40 St.Rep. 110, we stated that the Montana Rules of Evidence do not apply to sentencing hearings, Rule 101(c)(3), Mont.R.Evid. We find in instant case the court correctly used relaxed rules of evidence for sentencing purposes.

Appellant claims the court imposed an excessive sentence. Appellant legally fails to show any clear abuse of discretion. He merely argues on equitable terms that the sentence is unfair. This matter should be brought before the Sentence Review Board and not this Court. State v. Hubbard (Mont. 1982), 649 P.2d 1331, 39 St.Rep. 1608.

Appellant finally argues that the testimony of Tom Adams should have been suppressed. He claims Adams failed to give him Miranda warnings. This precludes any statements made by him to Adams to be admitted into evidence. We disagree.

Appellant relies on Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, for the proposition that statements made, while a person is in custody or "otherwise deprived of his freedom by authorities in any

significant way," are inadmissible unless warnings are given. Orozco v. Texas (1969), 394 U.S. 324, 22 L.Ed.2d 311, 89 S.Ct. 1095, the Supreme Court held that four officers who surrounded and questioned a defendant at his home constituted sufficient impairment of freedom and thereby suppressed statements made without Miranda warnings. The U.S. Supreme Court in Brewer v. Williams (1977), 430 U.S. 387, 51 L.Ed.2d 424, 97 S.Ct. 1232, stated that when a person is in custody and they request an attorney, further questioning must stop until an attorney is present. Appellant contends the language in State v. Blakney (1979), 185 Mont. 470, 605 P.2d 1095, "maybe I should have an attorney" requires questioning to cease.

In State v. Ryan (1979), 182 Mont. 130, 135, 595 P.2d 1146, 1148, we stated:

> "[M]iranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited. [Oregon v. Mathiason (1977)], 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719."

In instant case, the appellant invited Tom Adams and a Georgia officer into the residence where he was staying, and during a cup of coffee, discussed the whereabouts of the missing V.I.P. property. Appellant requested an attorney if their conversation was taped. Thereafter Adams did not use a tape recorder and sought to hear appellant's side of the story. Adams neither sought a confession nor even suggested he would be under arrest.

Appellant was never in custody, nor was his freedom restricted in any way. He requested an attorney only if a

tape recorder was used. He made no incriminating statements.

We therefore hold the court properly admitted Tom Adams' testimony. Appellant made his statements to Adams voluntarily and further, because he was not in a custodial setting or had his freedom impaired in any manner, Miranda warnings were unnecessary.

We affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Hon. Chan Ettien, District Judge,
sitting in place of Mr. Justice
Frank B. Morrison Jr.

-14-