No. 86-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DAVID L. PEASE,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David L. Pease, pro se, Hamilton, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Kimberly Kradolfer, Asst. Atty. General, Helena
John Robinson, County Attorney, Hamilton, Montana
Margaret Tonon, Deputy County Atty., Hamilton

---

Submitted on Briefs: May 14, 1987

Decided: July 21, 1987

Filed: JUL 21 1987

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant David Pease was convicted of six counts of sexual intercourse without consent by jury trial in the District Court of the Fourth Judicial District, Ravalli County. Defendant appealed. We affirm.

The defendant raises ten issues on appeal:

1. Was Mr. Pease denied equal protection of the laws by way of selective prosecution?

2. Was Mr. Pease denied a speedy trial?

3. Was Mr. Pease denied effective assistance of counsel by reason of conflict of interest?

4. Was Mr. Pease denied bail by reason of excessive bail?

5. Was Mr. Pease denied constitutional and statutory rights during his incarceration as a pre-trial detainee?

6. Was Mr. Pease denied a fair trial by not being allowed to present his defenses of violation of equal protection, jury nullification, and victim conduct?

7. Was Mr. Pease denied his constitutional rights under the 5th and 14th amendments to the Constitution of the United States by being indicted by an information rather than by a grand jury?

8. Was Mr. Pease denied a fair trial by being denied a change of venue?

9. Was Mr. Pease denied his constitutional rights by not being able to have new evidence presented on his motion for a new trial?

10. Was Mr. Pease punished unconstitutionally when sentenced to pay costs of his prosecution and jury costs?

David Pease was the principal and a teacher at the Liberty Christian School in Ravalli County from 1982 through 1984. In early 1985, one of the students at the school

informed her counselor that she and Mr. Pease had had sexual intercourse on six different occasions during 1984. At the time of the first five sexual encounters, the female student was 13 years of age, and at the time of the last sexual encounter she was 14 years of age.

The matter was reported to the Welfare Department and the Ravalli County Sheriff's office. Mr. Pease was charged by information on June 12, 1985, with six counts of sexual intercourse without consent. Trial concluded on July 8, 1986, and the defendant was found guilty by the jury of all six counts of sexual intercourse without consent. During the trial, Mr. Pease admitted to having sexual relations with the victim.

Mr. Pease was sentenced to 15 years at the Montana State Prison on each of the six counts, to be served concurrently. The District Court suspended all but six months of the sentence, to be served in the county jail, in addition to the pretrial incarceration which had already been served. The court also directed the defendant to undergo sex offender treatment, pay the costs of the mental health counseling required by the victim and her family, restrict his associations with persons under the age of 18, obtain steady employment or do 40 hours of community service each month, and pay costs of the jury trial and the costs of the prosecution.

Mr. Pease appealed pro se. He has been released pending the appeal.

Before we begin addressing the issues, we must rule on a motion made by the State to strike all extraneous materials which Mr. Pease appendixed to his brief. Those materials, which were not made part of the record below, include two letters from the victim to Mr. Pease, a copy of a retainer agreement, two newspaper articles, and billing statements from Mr. Pease's original attorney. In accordance with

§ 46-20-701, MCA, and State v. Dess (Mont. 1983), 674 P.2d 501, 502, 41 St.Rep. 31, 33, we grant the motion to strike. We have not considered the material.

I

Was Mr. Pease denied equal protection of the laws by way of selective prosecution?

Mr. Pease argues that the State knew of at least six men who had had sexual relations with the victim, but that he was selected out from the group for prosecution, thereby denying him equal protection guarantees. In State v. Muldonado (1978), 176 Mont. 322, 328-29, 578 P.2d 296, 300, this Court cited the United States Supreme Court and pointed out that some selectivity is not a constitutional violation absent a showing that the selection was based on an unjustifiable standard such as race, religion, sex, or other arbitrary classification such as the exercise of the First Amendment right to free speech.

Mr. Pease's selectivity argument fails for two reasons. First, three of the other alleged offenders have been charged and the decision to charge a fourth was still pending at the time of Mr. Pease's trial. Therefore, Mr. Pease has not shown he was selectively prosecuted. Second, Mr. Pease has not shown that any unjustifiable standard was used to determine who would be prosecuted. Accordingly, we conclude Mr. Pease was not denied equal protection of the laws.

II

Was Mr. Pease denied a speedy trial?

Mr. Pease argues that the 398 days from the day of his arrest on June 4, 1985, to the beginning of trial on July 7, 1986, denied him his right to a speedy trial. State v. Grant (Mont. 1987), ___ P.2d ___, ___, 44 St. Rep. 994, 996, set

4

out the four-factor test which this Court has applied in determining speedy trial issues. Those factors are: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted the right; and (4) whether the defendant was prejudiced. All four of these factors must be considered.

The length of the delay in this case raises the presumption that the delay was prejudicial and triggers our consideration of the other factors. Fitzpatrick v. Crist (1974), 165 Mont. 382, 528 P.2d 1322. After careful review of the record, we conclude that Mr. Pease is responsible for approximately 310 days of the delay. During the course of this case, Mr. Pease deluged the court with approximately 41 motions. Several different trial dates were set and then vacated because of these various motions. A writ of supervisory control was filed by Mr. Pease and approximately 5 continuances were granted by the court so Mr. Pease's motions could be heard and ruled on before the trial started. While it is perfectly acceptable to make numerous motions, it is a simple fact that consideration of motions takes time and may delay a trial.

Because 310 out of the 398 days are chargeable to the defendant, we conclude that the State was diligent in it efforts to bring the defendant to trial. The defendant did assert his rights regarding the speedy trial issue, but because his own conduct prevented the State from bringing him to trial in a timely manner, he cannot now claim he was prejudiced by the delay. We conclude Mr. Pease was not denied a speedy trial.


## III

Was Mr. Pease denied effective assistance of counsel by reason of conflict of interest?

5

Mr. Pease argues that his attorney was actually representing his father and thus a conflict of interest ensued. In support of his argument, Mr. Pease points out that his father hired and paid for his attorney. Mr. Pease further asserts that the attorney did not make an effort to reduce his bail, did not properly prepare for trial or question all witnesses, did not consult with him as much as he should have, and did not answer all his questions.

This Court has cited a two-pronged test previously enunciated by the United States Supreme Court regarding ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. (Cite omitted.)

State v. Boyer (Mont. 1985), 695 P.2d 829, 831, 42 St.Rep. 247, 250.

Mr. Pease has failed to show that his attorney's performance was deficient. Mr. Pease was represented by counsel from June 8, 1985, until November 13, 1985, at which time he dismissed his attorney. A review of the record indicates that during that approximately five month period, Mr. Pease's counsel did all that could reasonably be required of him. Mr. Pease's attorney had conferences with the defendant, the defendant's parents, the prosecutor, and numerous other people connected with the case. Mr. Pease's attorney also researched the law, made several motions regarding the case, took witness statements, and made several appearances in court on Mr. Pease's behalf. The fact that Mr. Pease's

6

father actually paid for the defendant's attorney and consulted with the attorney does not establish a conflict of interest and Mr. Pease has not established that a conflict of interest existed in any way. We conclude Mr. Pease was not denied effective assistance of counsel.

## IV

Was Mr. Pease denied bail by reason of excessive bail?

Mr. Pease contends that the $100,000 bail originally set in his case effectively denied him bail. Bail was later set at $40,000. After consideration, we conclude that Mr. Pease's bail was not excessive and was in fact reasonable after considering the 10 factors found in § 46-9-301, MCA. Section 46-9-301, MCA, provides:

> In all cases that bail is determined to be necessary, bail must be reasonable in amount and the amount shall be:
> (1) sufficient to ensure the presence of the defendant in a pending criminal proceeding;
> (2) sufficient to assure compliance with the conditions set forth in the bail;
> (3) sufficient to protect any person from bodily injury;
> (4) not oppressive;
> (5) commensurate with the nature of the offense charged;
> (6) considerate of the financial ability of the accused;
> (7) considerate of the defendant's prior record;
> (8) considerate of the length of time the defendant has resided in the community and of his ties to the community;
> (9) considerate of the defendant's family relationships and ties; and
> (10) considerate of the defendant's employment status.

Mr. Pease was charged with offenses which had a potential sentence of 120 years in prison and $300,000 in fines. Mr.

Pease testified that he had previously considered leaving the Hamilton area with the victim prior to his arrest. Mr. Pease's bail was reasonable because it insured his presence in future criminal proceedings. We conclude Mr. Pease's bail was not excessive.

V

Was Mr. Pease denied constitutional and statutory rights during his incarceration as a pre-trial detainee?

Mr. Pease asserts that the Ravalli County jail conditions do not meet basic health and safety standards and thus denied him his right to a clean and healthful environment and inflicted cruel and unusual punishment upon him. We do not pass judgment on these arguments.

If the defendant believes the conditions of his confinement do not meet the required standards, he may file a civil action. Therefore, we do not make a ruling on this issue other than to conclude his argument does not justify a reversal or dismissal of this case.

VI

Was Mr. Pease denied a fair trial by not being allowed to present his defenses of violation of equal protection, jury nullification, and victim conduct?

Mr. Pease argues that he was denied a fair trial because he was not permitted to bring up three theories during his trial and because his jury instructions on the three theories were denied. Mr. Pease's first defense was the equal protection/selective prosecution argument addressed in Issue I. As stated in the discussion of Issue I, Mr. Pease has not presented any evidence which would indicate he was selectively prosecuted. In addition, Mr. Pease has not stated or shown any unjustifiable standard under which he may have been

8

selectively prosecuted. We conclude the court properly excluded any reference or jury instruction based on Mr. Pease's equal protection argument.

Likewise, the court properly excluded Mr. Pease's arguments regarding the victim's conduct and jury nullification. Section 45-5-501(2)(c), MCA, provides that a victim is incapable of consent if she is less than 16 years old. The victim's alleged consent or conduct is irrelevant to this case because she was less than 16 years old and thus evidence on that subject was properly excluded. The court was also correct not to instruct the jury that it may ignore the law and find the defendant not guilty even if he had violated the statute in question. We conclude that Mr. Pease was not denied a fair trial because he was unable to present the equal protection, jury nullification, and victim conduct arguments.

## VII

Was Mr. Pease denied his constitutional rights under the 5th and 14th amendments to the Constitution of the United States by being indicted by an information rather than by a grand jury?

Mr. Pease argues that his indictment by information rather than by a grand jury was unconstitutional. Mr. Pease's argument is contrary to past holdings of this Court as well as the United States Supreme Court. See State v. Corliss (1967), 150 Mont. 40, 43-44, 430 P.2d 632, 634, and Hurtado v. People of California (1884), 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed.2d 232, 239. In addition, § 46-11-101, MCA, provides that an indictment by information is acceptable. We hold that Mr. Pease was properly charged by information.

9

# VIII

Was Mr. Pease denied a fair trial by being denied a change of venue?

Mr. Pease contends that he was denied a fair trial because the court denied his motion for a change of venue in spite of the local publicity generated by his trial. Mr. Pease relies partially on the news articles which were appended to his brief. Those articles were not part of the record and will not be considered. However, we will consider those articles which are a part of the record.

Mr. Pease filed an objection to his denial for a change of venue after his trial had started and attached 19 articles that had appeared in The Missoulian and The Ravalli Republic. These articles ranged from the reporting of the initial charging to the posting of bond to the filing of Mr. Pease's various motions.

This Court, citing earlier Montana cases, has stated:

> [T]he rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. (Cite omitted.)
> In State v. Paisley (Mont. 1983), 663 P.2d 322, 324, 40 St.Rep. 763, 765, we stated:
> Absent abuse of discretion the District Court's ruling on a motion for change of venue will be affirmed.
>
> . . .
>
> When prejudicial pretrial publicity is alleged, the publicity must be inflammatory and create a reasonable apprehension that a fair trial is not possible before the motion will be granted. (Cite omitted.)

State v. Holmes (Mont. 1983), 674 P.2d 1070, 1073, 40 St.Rep. 1973, 1976. The newspaper articles in question were not

10

editorials. They were news articles. Although the mere reporting of the rape charges may possibly lead to prejudicial pretrial publicity, we conclude that the publicity was not inflammatory and did not create a reasonable apprehension that a fair trial was not possible.

In addition, the District Court judge did all that he could to guarantee a fair trial. He allowed extensive voir dire of the jury, taking a full two days. He granted four of the nine challenges Mr. Pease made for cause. And he excused a juror for cause because of an attorney-client relationship with the prosecutor. Mr. Pease has not shown an abuse of discretion by the District Court, he has not shown that there was a reasonable apprehension that he could not receive a fair and impartial trial, and thus the court's ruling on the motion for the change of venue is affirmed.

IX

Was Mr. Pease denied his constitutional rights by not being able to have new evidence presented on his motion for a new trial?

Mr. Pease argues that new evidence in the form of testimony from the victim and testimony from the mother-in-law of another man also charged with sexual intercourse without consent with the victim should have been allowed for his motion for a new trial. Section 46-16-702, MCA, provides that a court may grant a new trial "if required in the interest of justice." Applications for new trials based on new evidence are not favored because the defendant has already had ample opportunity to present his case. State v. Higley (Mont. 1980), 621 P.2d 1043, 1055, 37 St.Rep. 1942, 1955.

In certain instances, however, new evidence may require a new trial:

11

> (1) . . . the evidence must have come to the knowl-
> edge of the applicant since the trial;
> (2) that it was not through want of diligence that
> it was not discovered earlier;
> (3) that it is so material that it would probably
> produce a different result upon another trial;

Higley, 621 P.2d at 1055, citing State v. Greeno (1959), 135
Mont. 580, 586, 342 P.2d 1052, 1055. After consideration of
the three-factor test, we conclude the court did not abuse
its discretion in denying the motion for a new trial. The
testimonial evidence could have been discovered with due
diligence. A simple interview with the two people would have
brought out their testimony. The victim's testimony regard-
ing her relationship with Mr. Pease was inadmissible in any
case.


                                X

Was Mr. Pease punished unconstitutionally when sentenced
to pay costs of his prosecution and jury costs?

Mr. Pease contends that §§ 46-18-232 and 233, MCA, are
unconstitutional because they leave to the discretion of the
judge whether to impose costs of prosecution, thus permitting
discrimination in violation of equal protection of the laws.
Section 46-18-232, MCA, provides in pertinent part:

> A court may require a convicted defendant in a
> felony or misdemeanor case to pay costs, as defined
> in 25-10-201, plus costs of jury service as a part
> of his sentence.

Section 46-18-233, MCA, allows costs to be assessed as a
condition on a suspended or deferred sentence.

Section 45-5-503, MCA, sets the maximum punishment for
felony sexual intercourse without consent at not more than 20
years in prison and a fine of not more than $50,000. The

costs imposed in this case are well within the $50,000 limit. The decision to impose costs as part of a sentence rests with the discretion of the trial court. Mr. Pease has not shown anything unconstitutional or violative of equal protection guarantees by allowing a judge the discretion to impose prosecution, jury, or counseling costs. We affirm the court's imposition of costs in this case.

The District Court is affirmed in full.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices