No.   93-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

LANCE DIXON,

      Defendant and Appellant.

FILED

FEB 24 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Maurice R. Colberg, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Gary E. Wilcox, Yellowstone County Public Defenders,
         Billings,  Montana

         William F. Hooks, Appellate Defender Office, Helena,

         Montana

      For Respondent:

         Hon.  Joseph P. Mazurek, Attorney General: Patricia
         J. Jordan, **Ass't** Attorney General, Helena, Montana

         Dennis Paxinos, Yellowstone County Attorney: Charles
         Bradley, Deputy Yellowstone County Attorney,
         Billings,  Montana

Submitted on Briefs:  January 7, 1994

Decided:  February 24, 1994

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Thirteenth Judicial District Court, Yellowstone County. A jury convicted defendant Lance Dixon (Dixon) on two counts of sexual intercourse without consent. He appeals. We affirm.

Dixon presents two issues:

1. Whether the District Court erred by limiting Dixon's cross-examination of the complaining witness, H.D.

2. Whether the District Court erred by denying Dixon's motions for a mistrial based on alleged prosecutorial misconduct.

On New Year's Eve, 1991, H.D. went with some friends to a local bar in Billings, Montana. While leaving the bar she became separated from her friends. Dixon was outside the bar and he and H.D. started talking. Dixon offered her a ride home which she refused.

Dixon then mentioned that he knew where her friends were and offered her a ride to find her friends. She accepted. Dixon told her that he left his car at a trailer where he was staying. Thus, at about 2:00 a.m., H.D. got into a cab with Dixon and the cab dropped them off at the trailer.

Dixon then told H.D. that he did not have his car keys and suggested that she enter the trailer since it was cold outside. H.D. testified that once inside the trailer, Dixon shoved H.D. down the hallway to a bedroom, where he forced her to have sexual intercourse with him. She also testified that he later forced her to perform oral sex on him.

Dixon admitted that the sexual acts occurred, but contended that H.D. consented to the sexual acts. A jury convicted Dixon and the District Court sentenced him to a total of thirteen years in the Montana State Prison, to run concurrent with a federal court sentence imposed on him. He appeals.

I

Did the District Court err by limiting Dixon's cross-examination of H.D.?

At trial, Dixon placed H.D.'s toxicology and lab reports into evidence, which indicated that H.D. had a blood alcohol level of .06 at 7:00 a.m. the morning after the incident. H.D. testified that she had consumed a glass of wine, maybe two beers and some champagne the evening before the sexual assault, but had no alcohol after midnight. H.D., then 20, also testified that she knew it was illegal to use a false identification card to purchase alcohol.

During cross-examination, Dixon's counsel asked H.D. if she was aware that the legal limit of intoxication in Montana was .10. The prosecutor objected to the question on the grounds of relevance. The District Court sustained the objection and stated that the evidence about H.D.'s intoxicated condition was relevant, but the statutory inference of .10 was irrelevant.

Dixon argues that the court improperly limited his cross-examination of H.D. He contends that the question of whether H.D. knew the legal limit of intoxication was relevant because: 1) the State "opened the door" by asking about her knowledge of the law-- the false I.D. question; and 2) the testimony was proper

3

impeachment testimony since she testified to the amount of alcohol she had consumed.

Section 61-8-401(4), MCA, states:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time alleged, as shown by analysis of the person's blood, urine, or breath, shall give rise to the following inferences:
>
> . . .
>
> (c)   If there was at that time an alcohol concentration of 0.10 or more, it may be inferred that the person was under the influence of alcohol.   The inference is rebuttable.

The statutory inference of .10 is only relevant in "civil or criminal actions . . . [in which a] person [is] driving or [is] in actual physical control of a vehicle while under the influence of alcohol."   Section 61-8-401(4)(c), MCA.

Here, there was no evidence to show that H.D. was driving or in actual physical control of a car that night.   Thus, her knowledge of the statute was irrelevant and the State's objection was properly sustained.

Since H.D. testified to the amount of alcohol she consumed, the court allowed evidence of H.D.'s intoxicated condition. In fact, Dixon testified that H.D. was tipsy, but she was not drunk. We hold that the District Court correctly acknowledged that evidence of H.D.'s intoxicated condition was relevant as impeachment testimony, but her knowledge of the statutory inference of .10 was irrelevant.

4

## II

Did the District Court err by denying Dixon's motions for a mistrial based on alleged prosecutorial misconduct?

Dixon alleges that the prosecutor acted so inappropriately that his misconduct was sufficiently prejudicial to warrant a mistrial. First, he argues that, in the presence of the jury, the prosecutor improperly attacked defense counsel while conducting voir dire of the alternate jurors. The prosecutor stated:

> [Defense counsel] asked you this question, would you like to be seated in . . . [the defendant's] chair and have someone of your mind [on the jury]? I don't think anyone can answer that. <u>I think that's a very, very, **very** wrong question to ask a juror.</u> Put yourself in place of the defendant. I will ask you if you will be fair and keep in mind that this is an open court where we try to have honesty because they're going to decide. Would you buy that?

(Emphasis added.) The prosecutor also stated:

> And do you understand that no witness has to be corroborated? [Defense counsel] asked a question of one of the jurors, would you look for other evidence to determine if it were blue paint or red paint? What his question was getting at is this. I think you could not resolve the conflict unless you had other corroborating evidence, some other evidence to tell whether it was blue paint or red paint, you understand? And I think you'll be instructed that you don't need corroborating evidence to believe one witness over another. It's nice if you have it, but you don't need it. How many witnesses do you believe you will find to an act of forcible intercourse?

After the second question, Defense counsel approached the bench and moved for a mistrial. The court denied the motion.

Additionally, Dixon argues that the prosecutor violated an order in limine prohibiting references to H.D. during trial as a **"victim."** He alleges that the prosecutor acted improperly when he

5

referred to H.D. as a "female rape <u>victim</u>."  (Emphasis added.)

When the District Court granted the motion in limine to exclude any references to H.D. as the "victim," it stated:

> I guess I worry about if I grant a motion in limine and the word victim slips out, then where are we?
>
> DEFENSE COUNSEL:  Well, I don't think that would be prejudicial err[or].
>
> THE COURT:  Okay.  Basically you're agreeing to that; so I'll grant that motion in limine and recognize we always could be faced with a problem if it happens.

Later, in trial, the prosecutor objected to a question posed to a detective about a knife found at the trailer. H.D. had earlier testified that Dixon used a foot long knife with a wooden handle to assault her.  But, the only knife found at the trailer was a green lock blade knife.  Defense counsel asked the detective:

> Do you think under any lighting circumstances you would confuse [the green lock blade knife] for a foot long knife with a wooden handle?
>
> PROSECUTOR:  Objection.  I think if he were a female rape victim --

After this comment, defense counsel moved for a mistrial: the court, however, denied the motion.

"A mistrial is appropriate only upon a demonstration of manifest necessity coupled with the denial of a fair and impartial trial."  State v. Benton (1992), 251 Mont. 401, 404, 825 P.2d 565, 567.  We will uphold a district "court's denial of a motion for mistrial . . . [if there is not] clear and convincing proof of error."  <u>Id.</u> at 567-68.

Here, Dixon has failed to establish error. Although improper, the prosecutor's comments were insignificant when viewed in context

6

with the entire record. We hold that the prosecutor's comments did not prejudice Dixon and he was not denied a fair and impartial trial.

In fact, the District Court ensured that Dixon's right to a fair trial was preserved. The court instructed the jury that the comments of counsel were not evidence. The court also instructed the jury to consider only the evidence when deciding Dixon's fate. Thus, the jury was instructed not to use the prosecutor's comments to decide the outcome of the case. After a careful review of the record, we conclude the District Court properly denied Dixon's motions for a mistrial.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7