No. 94-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

GARY DENNIS McMAHON,

     Defendant and Appellant.

**FILED**

MAY 4 - 1995

*Ed Smith*

CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Meagher,
The Honorable Roy D. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

       Bruce E. Becker, Attorney at Law, Livingston,
       Montana

     For Respondent:

       Hon. Joseph P. Mazurek, Attorney General; Micheal
       Wellenstein Ass't Attorney General, Helena, Montana

       John V. Potter, Meagher County Attorney, White
       Sulphur Springs, Montana

Submitted on Briefs:  March 16, 1995

Decided:    May 4, 1995

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court

Gary Dennis McMahon (McMahon) appeals his conviction in the Fourteenth Judicial District, Meagher County, of misdemeanor assault and two counts of felony intimidation.  We reverse.

Since this matter is being remanded for retrial, we set forth only enough facts to put the issue into proper context.

On September 16, 1993, McMahon took a high dosage of valium and codeine, brandished a rifle, and the sheriff was summoned. The sheriff called to the scene found McMahon laying face down on the floor of his trailer.  The sheriff also found two pill bottles and took them from the trailer to ascertain the threat the pills posed to McMahon.  McMahon allegedly came from the trailer with a knife and threatened the sheriff physically and verbally until the bottles were given back to McMahon.  McMahon was handcuffed and bound at the knees and ankles, and strapped to a gurney.  It is alleged that McMahon threatened to kill the sheriff and sheriff's wife and threatened ambulance and hospital personnel.  He was charged with misdemeanor assault and two counts of felony intimidation.

Six issues are presented:

1.   Was there sufficient evidence to support McMahon's conviction for misdemeanor assault.

2.   Was the information charging McMahon with intimidation defective?

3.   Was McMahon properly charged with intimidation?

4.   Did the District Court err in denying McMahon's motion for a directed verdict?

5.   Did the District Court err in denying McMahon's motion for mistrial when, during voir dire and in front of other prospective jurors, several prospective jurors commented on McMahon's reputation and one prospective juror commented on her fear of McMahon arising out of the incident in question?

6.   Whether McMahon's intoxication rendered him incapable of forming the requisite criminal intent.

Since we reverse on the basis of improper juror comments during voir dire (Issue 5) we need not discuss Issues 1, 2, 3, 4, and 6.

Did the District Court err in denying McMahon's motion for mistrial when, during voir dire and in front of other prospective jurors , several prospective jurors commented on McMahon's reputation and one prospective juror commented on her fear of McMahon arising out of the incident in question?

When asked about the difficulty of following the judge's instructions regarding the presumption of innocence, prospective juror P.H. stated that "I was kind of involved, you know what I mean.  When someone calls and says, 'You better come get your children, because there's a guy with a gun,' then you know, I ran. I was scared and they were scared.  So, I don't know."  Prospective juror K.M. stated he should not be a juror because of extensive **time** spent with McMahon in the classroom and his knowledge of McMahon.  He stated that "I've had different situations arise with him."  When being questioned about potential bias, prospective juror C.C. stated "I could try to listen to all of the evidence. It's kind of hard, because I've seen him downtown in action. I know he's capable of doing things."  The judge admonished that he did not want the prospective jurors to address the specifics of any prior knowledge they had about the defendant, but merely to answer

whether they had prior knowledge. McMahon's counsel moved for, and the judge denied, a motion for a mistrial.

The standard of review applied to a district court's denial of a motion for mistrial is "clear and convincing evidence that the trial court's ruling was erroneous." State v. Gollehon (1993), 262 Mont. 293, *302, 864* P.2d 1257, 1263 (citation omitted). "The decision of a district court judge as to the impartiality of a jury should not be set aside unless there is clear abuse of discretion." State v. Sullivan (1994), 266 Mont. 313, 320, 880 P.2d 829, 834. Regarding juror prejudice, this Court further stated that:

> It is only where [jurors] form fixed opinions of the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict solely on the evidence presented in court that they become disqualified as jurors.

*Sullivan,* 880 P.2d at 834; Great Falls Tribune v. District Court (1980), 186 Mont. 433, 439-40, 608 P.2d 116, 120. Although the Court in *Sullivan* was considering whether the district court erred in its failure to strike individual jurors for cause, its analysis is applicable to the instant case.

In State v. Dixon (1994), 264 Mont. 38, 869 P.2d 779, we upheld the conviction where the prosecutor's improper comments were considered insignificant when viewed in the context of the entire record. We noted that the judge instructed the jury not to use comments such as counsel's as evidence, and to consider only evidence when debating the verdict. *Dixon,* 869 P.2d at 781. In State v. Walton (1986), 222 Mont. 340, 342, 722 P.2d 1145, 1146, the prosecutor made potentially erroneous and prejudicial comments

4

regarding presentation of evidence to the judge but the judge admonished the prosecutor, issued precautionary statements to the jury, and the jury ultimately rejected several of the State's charges. In State v. Gafford (1977), 172 Mont. 380, 563 P.2d 1129, we held that non-responsive and prejudicial answers by a prospective juror were not cause for reversal when the defendant's motion was not made at the first recess following the answers and the answers had been invited by further questions of defense counsel which were common and expectable. In State v. Rhodes (1974), 164 Mont. 455, 524 P.2d 1095, we held that a mistrial for prejudice against the defendants, caused by a juror's comments, was not warranted because defense counsel did not make a sufficient showing of prejudice.

These cases demonstrate a trend that improper comments by prosecutors or prospective jurors about the defendant or about the evidence, are not grounds for mistrial if the judge instructs the jury to disregard the questionable comment and if the court is satisfied that the juror can lay aside a fixed opinion and render a verdict solely on the evidence presented. Sullivan, 880 P.2d at 834. In the instant case, the judge admonished the prospective jurors to avoid bias and to confine their discussion to the fact that they may have a bias rather than the substance or source of that bias.

We conclude, however, that the prospective juror comments in this case were so prejudicial that reversal is warranted. Comments by prospective jurors C.C. and K.M. damaged McMahon's reputation

5

from the start. Prospective juror P.H.'s at the start of a two-day trial--in which one of the primary issues was whether McMahon had the ability to carry out his threats--clearly prejudiced McMahon's right to a fair and impartial jury. McMahon contends that his threats were conditional only and he had no ability to carry them out. Certain prospective jurors commented, in the presence of the entire panel of venireman, that they had "seen him downtown in action," that "situations" had arisen with him, and that the incident in question caused one of the prospective jurors to be fearful. These comments served to directly contradict McMahon's contention that his threats were mere words. They attested to the jurors' beliefs that McMahon's threats were not idle, that he was a man of action; and that he was a man who engendered fear in others. It would be extremely difficult, if not impossible for any juror, having heard these assessments of McMahon, to sit in impartial judgment of his claim that he posed no threat to anyone.

Although the instant facts are different from those in Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717, the decision in that case is instructive. Putro was a passenger in an automobile which was involved in an accident with a truck driven by Baker. Two other occupants of the Putro vehicle were killed in the accident. Baker pled guilty to manslaughter with regard to those two deaths. Putro, the survivor, then filed a civil suit for personal injury. By pre-trial order, it was ordered that there would be no reference to the criminal proceeding in the civil suit. The Great Falls Tribune published an article about the civil trial and made

reference to the fact that Baker had pled guilty to manslaughter as a result of the two deaths.  One of the jurors brought this article to the jury room with her the following day.  Three of the jurors admitted to having read the article.  Noting that the three jurors denied having been influenced by the article and that two of the three voted for the defense, the district court denied the motions for mistrial and new trial.  This Court reversed.

> The trial court should have declared a mistrial in justice to itself as well as to parties, so that a fair trial may result and the verdict when rendered may be entitled to the respect of both parties and the confidence of the court.  We cannot be too strict in guarding trials by juries from improper influences. This strictness is necessary to give due confidence to parties in the results of their causes, and to enlighten the public who have recourse to our courts that any improper influence which has the natural tendency to prejudice the verdict is grounds for a mistrial.  See Wright v. Eastlick, *125* Cal. 517, 58 P. 87; Hayward v. Richardson Construction Co., 136 Mont. *241, 347* P.2d 475, 77 A.L.R.2d 1144.

*Putro, 410* P.2d at 722.

This Court then went on to hold that the trial court must assess the "natural tendency" that the outside influence may have upon the jurors' deliberations.

> It is the duty of the trial judge to critically assess the "natural tendency" of the references made in a newspaper article.  If, on its face, it has an apparent prejudicial effect, and if possible and indeed probable prejudice and bias would be created in the minds of the jurors by reason of the damaging statement it contained, the admissions by the jurors that they had read the article, that it was in their presence in the jury room, and that comments were made about it during their deliberations upon a verdict, creates a situation of such inherent unfairness that a mistrial should be ordered to prevent a possible miscarriage of justice.  In such a case, contact of the jurors with outside, prejudicial influences is clearly demonstrated.

7

*Putro*, 410 P.2d at 722.

> The Court reversed the district court concluding,

> that unexplained prejudicial references to important matters in litigation may have a "natural tendency" to infect the proceedings with an unfairness that can be corrected only by starting anew the legal contest. Restricting the source of the facts to be considered by the jury to the witness stand is important in all cases.

*Putro,* 410 P.2d at 722.

Although the improper influence (newspaper article) in Putro is factually distinguishable from the improper influence (volunteered comments during voir dire) in the present case, the principles established in Putro are equally applicable in this **matter.** In particular, the principle that "any improper influence which has the natural tendency to prejudice the verdict is grounds for a mistrial." *Putro*, 410 P.2d at 722. Under the present facts, we hold that comments made in the presence of the entire panel indicating that certain jurors not only knew the defendant but were aware of his propensity for violence were highly prejudicial. Such prejudicial comments have a "natural tendency" to infect the proceedings with an unfairness that can be corrected only by declaring a mistrial and "starting anew the legal contest."

Our holding in this case should be interpreted narrowly, reserved only for the most egregious and prejudicial prospective juror comments; our holding does not encompass all statements volunteered by prospective jurors during voir dire. It pertains only to those comments which indicate the prospective juror is harboring a bias which he or she cannot lay aside or those comments which, when made in the presence of other prospective jurors,

8

amount to inadmissible opinions or comments about the defendant's character or propensities, thereby poisoning the perspective of the entire jury panel in such a way that the court cannot rectify the problem through admonishment or curative jury instructions.

In future cases, it would be advisable for district courts, before voir dire commences, to advise prospective jurors not to volunteer the substance of any comments or opinions that they may have about the parties. Rather, that they should merely advise the court that they have information (or an opinion) about a party. The trial Judge can then explore the substance of that information *in camera* thereby avoiding any taint to the entire jury panel

Reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

May 4, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

BRUCE E. BECKER
Attorney at Law
P.O. Box 1113
Livingston, MT 59047

HON. JOSEPH P. MAZUREK, Attorney General
Micheal Wellenstein, Assistant
Justice Bldg.
Helena, MT 59620

JOHN V. POTTER
Meagher County Attorney
P.O. Box 629
White Sulpher Springs, MT 59645

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy