No. 97-163 & 97-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 224

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JASON HARDAWAY,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jack E. Sands, Attorney at Law, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General

Cregg W. Coughlin, Ass't Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney,

Dale Mrkich, Ass't Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: January 15, 1998

Decided: September 9, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1 Jason Hardaway (Hardaway) appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to dismiss for lack of speedy trial, denying his motion for mistrial as a result of prejudicial comments made during jury *voir dire* and, in a separate matter, denying his motion for defense costs. We reverse and remand this matter to the District Court.**

Factual and Procedural Background

**¶2 Hardaway was arrested on February 22, 1995 following a high speed car chase that led to a subsequent foot chase through a field. When the officer caught up with Hardaway he was wearing a ladies slip, a black shirt and some jewelry. He was carrying a pair of jeans. The officer arrested Hardaway and transported him to the Yellowstone County Detention Facility. During an inventory search of Hardaway**

and the items in his possession, the detention officer found two small bindles containing a white powdery substance in the right front pocket of the jeans that Hardaway was carrying. The officer also found a bindle and a plastic baggie containing a white powdery substance in the right watch pocket of the jeans. The white powdery substances tested positive for methamphetamine. Although Hardaway later denied ownership of the jeans, Hardaway had the jeans in his possession when he was arrested and claimed the jeans from inventory to wear home when he was released from custody.

¶3 On February 27, 1995, the State of Montana (State) charged Hardaway with criminal possession of dangerous drugs. Hardaway appeared at the arraignment with appointed counsel and pled not guilty to the charge. On March 23, 1995, the District Court released Hardaway on his own recognizance. Trial on Hardaway's drug charge was set to begin on June 27, 1995. For reasons unknown, but believed to have been caused by the court's backlog, the case did not proceed to trial in June, but was reset for November 6, 1995.

¶4 On November 6, 1995, the court, the prosecutor, defense counsel and the jury assembled to proceed with the trial. Defense counsel, however, informed the court that he could not find Hardaway. The court issued a bench warrant. Hardaway was arrested on November 15, 1995 in Lake County on charges of burglary and theft. He was incarcerated and served with the outstanding Yellowstone County bench warrant. Yellowstone County charged Hardaway with bail jumping as a result of his failure to appear for the November 6, 1995 trial.

¶5 Hardaway retained new counsel on December 19, 1995. On May 22, 1996, Hardaway entered an Alford plea and was sentenced on the Lake County charges of burglary and theft. Thereafter, he was transported back to Yellowstone County to face the bail jumping and drug possession charges. The District Court set the trial on Hardaway's drug possession charge for November 26, 1996 (643 days after his arrest).

¶6 On October 9, 1996, Hardaway filed a motion to dismiss the drug possession charge based on lack of speedy trial. The court held a hearing and denied Hardaway's motion.

¶7 Hardaway's trial for bail jumping began on October 21, 1996. Hardaway called

two out-of-town witnesses, one appeared at trial, the other appeared via telephonic deposition. Following the presentation of the State's case, the court granted Hardaway's motion for directed verdict of acquittal. Defense counsel requested reimbursement for costs incurred in obtaining the out-of-town witnesses' testimony pursuant to § 46-15-116, MCA. The District Court denied the request for costs finding that defense counsel was retained, not court appointed and thus not eligible to receive reimbursement for the costs. Hardaway appeals from the District Court's decision denying his request for reimbursement (Cause Number 97-289).

¶8 On November 26, 1996, the jury was assembled for trial on Hardaway's drug possession charge. When asked if any of the prospective jurors knew the defendant, three members of the prospective panel revealed that they had been in court "a month ago for the defendant earlier for something else." One of those three prospective jurors commented that "[Hardaway] shouldn't have been doing what he was doing to be here." This prospective juror was removed for cause. The second prospective juror was peremptorily removed, and the third juror sat on the jury that decided Hardaway's drug possession case. In addition, another prospective juror stated during *voir dire* that she had seen an account of Hardaway's arrest on television, that she believed he was guilty, and that she would find him guilty regardless of the evidence presented at trial. This fourth juror was also removed for cause. As a result of these damaging comments made in the presence of the entire jury panel, defense counsel requested that the court inform the jury during *voir dire* that Hardaway had been acquitted of the bail jumping charge. The District Court denied Hardaway's specific request, but agreed to instruct the jurors that they were not to consider the prior criminal charge in any way. Defense counsel moved for a mistrial and the court denied the motion. The trial proceeded and the jury found Hardaway guilty of the drug possession charge. Following the jury verdict, Hardaway moved for a new trial due to the comments made during *voir dire*, and the court denied the motion. Hardaway appeals from the District Court's denial of his motion to dismiss for lack of speedy trial and denial of his motion for mistrial (Cause Number 97-163). This Court consolidated Hardaway's two appeals. Hardaway presents three issues on appeal:

¶9 1. Did the District Court abuse its discretion in determining that Hardaway's speedy trial rights were not violated?

¶10 2. Did the District Court abuse its discretion in denying Hardaway's motion for a

mistrial?

¶11 3. Did the District Court err in denying Hardaway's request for reimbursement of costs incurred in his defense of the bail jumping charge?

I

¶12 1. Did the District Court abuse its discretion in determining that Hardaway's speedy trial rights were not violated?

¶13 A criminal defendant is guaranteed a speedy trial by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. In determining whether a defendant has been denied his right to a speedy trial, this Court recently established a four-part balancing test in City of Billings v. Bruce, 1998 MT 186, ___ P.2d ___, 55 St.Rep. 750, which loosely follows the United States Supreme Court test set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The District Court applied the four-part Barker test to the facts of this case and determined that Hardaway's right to a speedy trial was not violated. We determine, however, that the District Court and the parties did not, at the time Hardaway moved for a dismissal based on lack of speedy trial, have the benefit of the Bruce decision. Therefore, we remand this issue to the District Court to hold a hearing regarding Hardaway's motion to dismiss for lack of speedy trial applying the test set forth in Bruce.

¶14 Under this Court's recently adopted speedy trial test, the District Court should analyze four factors: 1) length of delay, 2) reason for delay, 3) assertion of the right by defendant, and 4) prejudice to the defense. Bruce, ¶¶55-58. In remanding this issue to the District Court, we correct the court's allocation of time under the second factor and elaborate on the manner in which the Bruce decision is to be applied.

¶15 The second factor articulated in Bruce requires the court to consider the reasons for the delay. In so considering, the court determines which party is responsible for specific periods of time, then respectively allocates the total time delay between the parties.

¶16 The District Court determined that the case would have been tried on November 6, 1995, but for Hardaway's failure to appear at trial and thus, attributed the time

between February 22 (Hardaway's arrest) and November 6 (the second trial date) to Hardaway. Hardaway contends that in attributing this time to him, the District Court has effectively concluded that Hardaway waived his right to a speedy trial by failing to appear on November 6th. Hardaway further argues that he did not appear for trial on November 6th because his attorney did not inform him of the trial date. Moreover, Hardaway argues that the fact that he was acquitted of the bail jumping charge is further evidence that he should not be held accountable for the missed trial date and subsequently held responsible for the delay between his arrest and the November 6th trial date.

¶17 We determine that the District Court erred in attributing the time between February 22 and November 6 (257 days) to Hardaway. Had the trial been held on June 27th, as originally scheduled, Hardaway's right to speedy trial would have been satisfied. It is not apparent from the record why the June 27th trial date was vacated in favor of the November 6th setting. The District Court ventured that the resetting of trial from June 27th to November 6th was likely the result of backlog. Therefore, since the time delay between February 22nd to November 6th was not attributable to Hardaway, we allocate that time to the State as institutional delay.

¶18 The District Court allocated the 198 days between November 6, 1995 and May 22, 1996 (while Hardaway was held on Lake County charges) to Hardaway due to his failure to appear at the November 6th trial and due to the inability of Yellowstone County to obtain jurisdiction over him while he was held in Lake County. Hardaway argues that the State acted in bad faith during this period of time. He argues first, that as a result of the bail jumping charge in Yellowstone County, he could not post bond in Lake County to appear in Yellowstone County. Furthermore, when he did appear in Yellowstone County, he was tried on the bail jumping charge before the drug possession charge even though the drug possession charge was eighteen months older than the bail jumping charge. We agree with the District Court that this period of delay was the result of Hardaway's failure to appear at trial (even if he was not informed of the date) and his subsequent arrest in Lake County. We reject Hardaway's claim of bad faith and therefore allocate this period of delay to Hardaway.

¶19 Finally, the District Court allocated the remaining 188 days from May 22 through Hardaway's trial on November 26 to the State. The District Court, allocating only this 188 days to the State, determined that since the 188-day delay was not itself

violative of Hardaway's speedy trial right and was not intentional or deliberate, the State satisfactorily explained the reasons for the delay. As set forth above, we disagree with the court's allocation and, instead, allocate a total of 445 days to the State.

¶20 Pursuant to this Court's recent amendments to its speedy trial analysis, as set forth in Bruce, ¶56, if the court determines that the State is responsible for 275 or more days of the total delay, the State has the initial burden of demonstrating that the defendant has not been prejudiced by the delay. The 445-day delay attributed to the State exceeds the 275-day threshold and raises a presumption that Hardaway was prejudiced by the delay. Thus, in accordance with Bruce, the State has the initial burden of demonstrating a lack of prejudice.

¶21 We explained in Bruce that "[t]he State's proof should take into consideration, but need not include, all three traditional bases for prejudice: (a) pretrial incarceration, (b) anxiety and all of its attendant considerations, and (c) impairment of the defense. . . . Once the State has demonstrated lack of prejudice based on one or more of these considerations, the burden will then shift to the defendant to demonstrate prejudice and the district court will have to weigh the evidence of each party." Bruce, ¶56.

¶22 In stating that the State may demonstrate lack of prejudice on one or more of the traditional bases of prejudice, we intended that the State offer proof on as many bases as possible and that the District Court weigh that evidence to determine whether the burden should shift to the defendant to show prejudice. We clarify that if the State can only show lack of prejudice on one of the three traditional bases of prejudice, it must, at a minimum, address the question of whether there has been impairment of the defense. That is, the State must offer proof that the defense has not been impaired by the delay in bringing the defendant to trial.

¶23 If the State satisfies its burden of demonstrating that the defendant has not been prejudiced by the delay, the burden will shift to the defendant to show he/she has been prejudiced. With the above correction and this clarification of the Bruce decision, we remand this issue to the District Court to hold a hearing on Hardaway's motion to dismiss for lack of speedy trial applying the test set forth in Bruce.

II

No

¶24 2. Did the District Court abuse its discretion in denying Hardaway's motion for a mistrial?

¶25 Hardaway moved for a mistrial during jury *voir dire*, and moved for a new trial after the trial. The District Court denied both of Hardaway's motions concluding that Hardaway received a fair and impartial trial. We recently clarified in State v. Partin (Mont. 1997), 951 P.2d 1002, 54 St.Rep. 1474, that the district court, when deciding whether to grant a mistrial, should determine whether the conduct in question denies the defendant a fair and impartial trial. We further clarified that this Court will review a district court's ruling on a motion for a mistrial to determine whether the court abused its discretion. Partin, 951 P.2d at 1005.

¶26 In support of his motion for mistrial, Hardaway asserted that the jury panel was poisoned by comments made by four veniremen during *voir dire*. Three of the prospective jurors, S.E., D.V., and S.H., stated that they had been on Hardaway's jury panel one month earlier for his trial on bail jumping charges and that they recognized Hardaway and his attorney from that experience. S.E. expressed that "[Hardaway] shouldn't have been doing what he was doing to be here . . ." and that she believed she would be a potentially unfair juror in the drug possession case. S.E. was removed for cause. D.V. was peremptorily challenged, and S.H. sat on the jury that decided Hardaway's drug possession case. In addition, a fourth juror, J.D., stated that she had seen an account of Hardaway's arrest on television, that she believed he was guilty and that she would find him guilty regardless of the evidence presented at trial. J.D. also expressed that "[she] believe[d] that we've got too many people being killed for drugs. If we put them away from drugs, we wouldn't have to spend taxpayer's money on this [trial]. . . . [We] should just put them in jail." Shortly before being removed for cause, J.D. further expressed her opinion that "[Hardaway's] guilty or he wouldn't be here."

¶27 As a result of these damaging statements made in open court in the presence of the jury panel, defense counsel requested that the District Court inform the potential jurors that Hardaway had been acquitted of the bail jumping charges. The court refused to so instruct the jury, but agreed to instruct the veniremen that they were not to consider other criminal charges in any way. The District Court informed defense counsel that it was "this instruction or nothing." Defense counsel indicated that he preferred the instruction to nothing, but immediately moved for a mistrial. The District Court denied the motion. The case proceeded and the jury found

Hardaway guilty of the charges. Hardaway moved for a new trial at the conclusion of the trial and the court denied the motion.

¶28 In State v. McMahon (1995), 271 Mont. 75, 894 P.2d 313, this Court analyzed several cases wherein district courts had denied motions for mistrial based on juror prejudice. We recognized "a trend that improper comments by prosecutors or prospective jurors about the defendant or about the evidence, are not grounds for mistrial if the judge instructs the jury to disregard the questionable comment and if the court is satisfied that the juror can lay aside a fixed opinion and render a verdict solely on the evidence presented." McMahon, 271 Mont. at 79, 894 P.2d at 316. In McMahon, we held that when comments of members of the prospective jury are so prejudicial that they have a "natural tendency" to infect the entire proceedings with an unfairness, such prejudice can only be corrected by declaring a mistrial and "starting anew the legal contest." McMahon, 271 Mont. at 81, 894 P.2d at 317. However, we cautioned that our holding in McMahon should be interpreted narrowly and reserved only for the most egregious and prejudicial prospective juror comments. McMahon, 271 Mont. at 81, 894 P.2d at 317. We determine that this is such a case.

¶29 Hardaway argues that, "the jury was left with the firm impression that their Thanksgiving plans had to be interrupted because they had to hear the case of a defendant who had just been convicted a month previously and who was identified as obviously guilty by one prospective juror." In addition, Hardaway argues that the cautionary instruction given by the District Court, that the jurors should not consider other criminal charges in any way, did not defuse the incriminatory statements made by the prospective jurors. The State asserts that Hardaway has not shown that the jury was prejudiced by the remarks, nor has he established that the District Court's cautionary instruction did not cure any supposed harm.

¶30 We apply the general principle, as we did in McMahon, that " 'any improper influence which has the natural tendency to prejudice the verdict is grounds for a mistrial.' " McMahon, 271 Mont. at 80, 894 P.2d at 317 (quoting Putro v. Baker (1966), 147 Mont. 139, 148, 410 P.2d 717, 722). We conclude that the comments made by the prospective jurors in the presence of the entire panel were so prejudicial that they had a "natural tendency" to infect the proceedings with an unfairness that could only have been corrected by an instruction from the District Court that Hardaway had been acquitted of the bail jumping charge, thus preserving

Hardaway's presumption of innocence, or by declaring a mistrial and starting anew the legal contest. In the absence of such corrective action by the District Court, Hardaway was denied a fair and impartial trial. We hold that the District Court abused its discretion in denying Hardaway's motion for a mistrial or, in the alternative, by failing to instruct the jury that Hardaway had been acquitted on the bail jumping charge. Accordingly, in the event the District Court determines that Hardaway was not denied a speedy trial, we reverse and remand this matter to the District Court for a new trial.

## III

¶31 3. Did the District Court err in denying Hardaway's request for reimbursement of costs incurred in his defense of the bail jumping charge?

¶32 Following Hardaway's acquittal of the bail jumping charge, defense counsel moved for reimbursement of costs incurred in procuring testimony of two out-of-town witnesses. The first witness, Roberta Tamcke, flew from Oregon to Montana the day before trial and appeared as a witness at the trial. The second witness, Christopher J. Riccardi, was unavailable for trial and appeared via telephonic deposition. Defense counsel asserted that, pursuant to § 46-15-116, MCA, he was entitled to reimbursement of costs incurred in procuring this testimony. In support of his claim on appeal, defense counsel represents that he was acting *pro bono* on behalf of Hardaway.

¶33 The District Court determined that since defense counsel was retained, not court appointed, he was not entitled to reimbursement. Hardaway appeals from the District Court's denial of costs. The State moved this Court to dismiss Hardaway's claim for costs asserting that this issue does not effect substantial rights of the defendant and thus is not proper on appeal. Hardaway counters this argument by asserting that this issue is linked to his constitutional right to counsel. In support, Hardaway asserts that his court appointed counsel was providing ineffective assistance. Hardaway contends that, although his current counsel was willing to serve *pro bono*, his counsel should not be burdened with the witness costs incurred in his defense. We deny the State's motion to dismiss and consider Hardaway's appeal on the issue of reimbursement of costs.

¶34 The District Court, in denying reimbursement of witness costs, reasoned that §

46-15-116, MCA, "must necessarily be read in conjunction with § 3-5-901, M.C.A." and that, the "statute anticipates that the witness fees and expenses will be paid for witnesses called on behalf of the prosecution but not on the behalf of privately funded retained counsel where a defendant has not as an indigent requested court-appointed counsel." The District Court also noted that there was no request for attendance or subpoena of Ms. Tamcke pursuant to § 46-15-113, MCA (compelling attendance of out-of-state witness), and that the request for reimbursement should be denied for that reason.

¶35 The clear language of § 46-15-116, MCA, states that "[w]hen a person attends before a judge, grand jury, or court as a witness in a criminal case upon a subpoena, the witness shall receive the witness fee prescribed in Title 26, chapter 2, part 5. . . . The court may determine the reasonable and necessary expenses of subpoenaed witnesses and order the clerk of the court to pay the expenses from the appropriate city or county treasury." Section 3-5-901, MCA, states that "[t]o the extent the revenue is available . . . the state shall fund . . . the following district court expenses in criminal cases only . . . witness fees and necessary expenses . . . ." We disagree with the District Court's interpretation that the statutes apply only to court appointed counsel or indigent defendants since the statutes impose no such requirement. The only prerequisites that appear in the statutes are that the court has the revenue available and that the witness be subpoenaed.

¶36 The record indicates that Ms. Tamcke voluntarily appeared for trial on October 22, 1996 and acknowledged service of the subpoena shortly before testifying on the same day. Having been served with a subpoena prior to testifying, Ms. Tamcke qualifies for fees and costs under § 46-15-116, MCA. Moreover, we determine that the procedural requirements of § 46-15-113, MCA, for compelling the attendance of an out-of-state witness do not apply to an out-of-state witness who voluntarily appears and acknowledges service of a subpoena.

¶37 As to deposition costs, Hardaway argues that the statutes allowing costs do not distinguish between court appointed and retained attorneys, but rather rely on the indigency status of the defendant. Section 46-15-202(7), MCA, provides that "whenever a deposition is taken at the instance of a defendant who is unable to bear the expense of taking a deposition, the court shall direct that the expense . . . be paid by the city for a municipal court proceeding or by the state for a district court proceeding." Christopher Riccardi, also an out- of-town witness, was not available to

appear at Hardaway's trial. As a result, defense counsel conducted a telephonic deposition the night before trial and moved the court the next day for its admission into evidence. The court granted the motion allowing the testimony, but subsequently denied counsel's request for reimbursement of costs associated with procuring the testimony. While § 46-15-202(7), MCA, does not specifically address the cost of a telephonic deposition, we note that, in most instances, a telephonic deposition is more cost effective than incurring travel expenses associated with conducting a deposition in person. We hold that the costs of a telephonic deposition are within the scope of "a deposition" under § 46-15-202(7), MCA.

¶38 The record reveals that in Cause Number 97-163, Hardaway was declared indigent and an attorney was appointed on his behalf when he was arrested in 1995. However, Hardaway obtained new counsel in December 1995, claiming his court appointed attorney was rendering ineffective assistance. In addition, the District Court, based on Hardaway's showing of indigency, allowed the preparation of transcripts for purposes of appeal without cost to Hardaway, thereby supporting Hardaway's claim that his indigency status had continued throughout the time that counsel requested reimbursement. We agree with Hardaway that a defendant's entitlement to reimbursement for deposition costs under § 46-15-202(7), MCA, does not hinge on whether the defendant's counsel is court appointed or retained; rather, the determining factor is whether the defendant is indigent and thus unable to bear the expense. We remand this issue to the District Court for an award of costs consistent with this opinion.

¶39 In conclusion, we remand this matter to the District Court for the following purposes: First, the District Court shall conduct a hearing on Hardaway's motion to dismiss for lack of speedy trial. In conducting such hearing, the District Court shall adhere to the corrections and clarifications set forth in this opinion. In addition, the District Court shall apply the speedy trial test as recently set forth by this Court in City of Billings v. Bruce, 1998 MT 186, ___ P.2d ___, 55 St.Rep. 750. Second, if the court determines Hardaway was denied a speedy trial, the court shall dismiss the drug possession charge against Hardaway. In the alternative, if the court determines that Hardaway's constitutional right to a speedy trial was not denied, the court shall promptly set this matter for a retrial based on this Court's holding on Issue II. Finally, the District Court shall hold a hearing to determine the amount of Hardaway's costs in accordance with this Court's resolution of Issue III. Reversed and remanded.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice Terry N. Trieweiler concurring in part and dissenting in part.

**¶40 I concur with parts II and III of the majority opinion related to Jason Hardaway's motion for mistrial and reimbursement for costs incurred in his defense against the bail jumping charge. I also concur with the majority's decision to remand the speedy trial issue to the District Court for further consideration based on our decision in *City of Billings v. Bruce*, 1998 MT 186, 55 St. Rep. 750. However, I do not agree with all that is said in the majority's speedy trial analysis.**

**¶41 Specifically, I disagree with the majority's calculation of the number of days attributable to the State. The majority concludes, and I agree, that the 257 days of delay from the date on which Hardaway was charged until his November 6, 1995, trial date is attributed to the State. The majority also concludes, and I agree, that the 188 days after Hardaway's return to Yellowstone County until his final trial date is attributed to the State. However, the majority has arbitrarily concluded, without explanation, that the time from November 6, 1995 (the date of the trial at which Hardaway did not appear), until May 22, 1996 (the date on which Hardaway was returned to Billings following a guilty plea to other charges in Lake County), is attributed to Hardaway. The majority makes this conclusion in spite of the fact that Hardaway denied knowledge of the November 6 trial date; a jury apparently agreed that he had no knowledge of the November 6 trial date; and, whether or not he had knowledge of that trial date, he was arrested in Lake County on November 15, 1995, served with the outstanding Yellowstone County bench warrant, and could have been returned to Yellowstone County for trial at any time thereafter. There is no explanation of why the time from November 15, 1995, to May 22, 1996, is any less**

**attributable to the State as institutional delay than the time from May 22, 1996, to November 26, 1996. I conclude that it is attributable to the State and, therefore, that the total delay which should be attributed to the State in this case is 633 days, rather than the 445 days attributed by the majority. Therefore, even though the delay was institutional, rather than intentional, I believe that a delay of that length should weigh heavily against the State. However, whether the delay is sufficient to require dismissal of the charges against Hardaway will depend on further analysis consistent with the *Bruce* decision.**

**¶42 For these reasons, I concur with the result of the majority opinion, but not with all that is said therein.**

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing concurring and dissenting opinion.

/S/ WILLIAM E. HUNT, SR.