No. 00-840

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 275

STATE OF MONTANA,

   Plaintiff and Respondent,

v.

BYRON K. WRIGHT,

   Defendant and Appellant.



APPEAL FROM: District Court of the Twelfth Judicial District,
       In and for the County of Hill,
       Honorable John Warner, Judge Presiding

COUNSEL OF RECORD:

   For Appellant:

      Jeremy S. Yellin, Attorney at Law, Fort Benton, Montana

   For Respondent:

      Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
      Attorney General; Helena, Montana

      David G. Rice, County Attorney; Aileen Miller, Deputy County
      Attorney, Havre, Montana

          Submitted on Briefs: October 11, 2001

              Decided: December 3, 2002

Filed:

           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The Appellant, Byron K. Wright (Wright), appeals from the orders entered by the Twelfth Judicial District Court, Hill County, denying his motion for striking the entire jury panel and his motion for a new trial. We affirm.

¶2    The sole issue on appeal is whether the District Court abused its discretion by denying both Wright's motion to strike the entire venire panel and his motion to grant a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Wright was charged by information on January 6, 2000, with two counts of Criminal Sale of Dangerous Drugs, a felony, in violation of § 45-9-101(4), MCA, and one count of Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102(1), MCA. Wright pled not guilty to all three charges. A jury trial commenced on July 25, 2000, and at that time, Wright filed a Motion in Limine seeking exclusion of all references, comments, allusions, and/or statements regarding Wright's criminal history, prior convictions, and prior contacts with law enforcement. The District Court granted Wright's motion, and the jury selection process began.

¶4    The Honorable John Warner commenced voir dire by describing the charges against Wright and asking preliminary questions of the prospective jurors. When questioned if any of the jurors knew Wright, prospective juror, Timothy Goggins (Goggins), responded affirmatively. The following dialog occurred:

> **Goggins**: I'm acquainted as a coworker from the railroad. I also have knowledge of a case years ago that was involving Mr. Wright, where I was call as a jury [sic], but wasn't selected.

2

**The Court:** All right. So you know Mr. Wright. You have some idea of something. Do you have any opinion about this case before we start the questions? Can you just hear the evidence, make a decision based on what's presented in court here today, not any prior performed opinion?

**Goggins:** I have knowledge of – it was the same things.

**The Court:** But there was no conviction there that I know of or anything. See where we are here is: Can you decide this case fairly?

**Goggins:** I have no knowledge of this case.

**Mr. Yellin:** Your Honor, can I approach the bench, please?

(Off the record discussion held at the bench.)

**The Court:** My question to you: Can you judge this case fairly, sir?

**Goggins:** This case on its merits possibly, although I do know–

**The Court:** I know you have said you have some prior knowledge. I want to emphasize to all of the panel, that we all have a life. We are here today on only these allegations, only these allegations. And I just inquire of you, sir, can you judge this case fairly?

**Goggins:** I guess probably not.

**The Court:** All right, I'll excuse you then. Thank you for your candor.

¶5    When defense counsel, Yellin, approached the bench, he requested that the entire venire panel be dismissed. Then again after the State's voir dire, Wright's counsel moved to dismiss the entire panel and also hold individual voir dire on the basis of Goggins' statements about an earlier trial. The District Court denied both motions, finding that the remaining prospective jurors had not been prejudiced by the remarks.

3

¶6 During voir dire, Wright's counsel asked several prospective members of the venire panel how they were affected by Goggins' statement. The prospective jurors in essence stated they believed Goggins' comments were inappropriate. After the jury was selected, Wright's trial commenced.

¶7 On July 26, 2000, the jury found Wright guilty on all three charges. Wright filed a motion for a new trial on the issue of jury misconduct and prejudice on August 24, 2000. After a hearing on Wright's motion, the District Court denied the motion for a new trial holding that Wright was not prejudiced. On September 29, 2000, the District Court issued a written order denying Wright's motion for a new trial. Wright now appeals that order.

## STANDARD OF REVIEW

¶8 Granting or denying a motion for a new trial is within the discretion of the trial court. Section 46-16-702, MCA, and *State v. Gambrel* (1990), 246 Mont. 84, 91, 803 P.2d 1071, 1076. We have held that when the District Court has considered the matter, whether on a question for mistrial or motion for a new trial, this Court will not lightly disturb that ruling. *Mason v. Ditzel* (1992), 255 Mont. 364, 842 P.2d 707, and *State v. Counts* (1984), 209 Mont. 242, 679 P.2d 1245. "To overthrow it this Court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling." *Mason v. Ditzel*, 255 Mont. at 376, 842 P.2d at 715; *State v. Counts*, 209 Mont. at 248, 679 P.2d at 1248. "The decision of a district court judge as to the impartiality of a jury should not be set aside unless there is clear abuse of discretion." *State v. McMahon* (1995), 271 Mont. 75, 78,

4

894 P.2d 313, 315, quoting *State v. Sullivan* (1994), 266 Mont. 313, 320, 880 P.2d 829, 834.

## DISCUSSION

¶9 Did the District Court abuse its discretion by denying both Wright's motion to strike the entire venire panel and his motion to grant a new trial?

¶10 Wright argues that the District Court erred in denying both his motion to strike the entire venire panel and his motion for a new trial, which were premised on the theory that comments made by a prospective juror during voir dire poisoned the entire venire panel, and such comments can only be corrected by declaring a mistrial or granting a new trial.

¶11 In *McMahon*, we reversed the trial judge's denial of the defendant's motion for a mistrial based on comments from several prospective jurors regarding their knowledge of the defendant's violent tendencies and the expressed fear of the defendant by another prospective juror because of the very assault and intimidation incidents at issue in the trial. *McMahon*, 271 Mont. at 77-78, 894 P.2d at 315. However, we cautioned that our holding should be interpreted narrowly and reserved only for the most egregious and prejudicial prospective juror comments, amounting to inadmissible opinions or comments about the defendant's character or propensities, which could not be cured by admonishment or instruction from the court. *McMahon*, 271 Mont. at 81, 894 P.2d at 317.

¶12 The *McMahon* Court stated:

> In *State v. Dixon* (1994), 264 Mont. 38, 869 P.2d 779, we upheld the conviction where the prosecutor's improper comments were considered insignificant when viewed in the context of the entire record. We noted that

5

the judge instructed the jury not to use comments such as counsel's as evidence, and to consider only evidence when debating the verdict. In *State v. Walton* (1986), 222 Mont. 340, 722 P.2d 1145, the prosecutor made potentially erroneous and prejudicial comments regarding presentation of evidence to the judge but the judge admonished the prosecutor, issued precautionary statements to the jury, and the jury ultimately rejected several of the State's charges. In *State v. Gafford* (1977), 172 Mont 380, 563 P.2d 1129, we held that non-responsive and prejudicial answers by a prospective juror were not cause for reversal when the defendant's motion was not made at the first recess following the answers and the answers had been invited by further questions of defense counsel. In *State v. Rhodes* (1974), 164 Mont. 455, 524 P.2d 1095, we held that a mistrial for prejudice against the defendants, caused by a juror's comment, was not warranted because defense counsel did not make a sufficient showing of prejudice.

*McMahon*, 271 Mont. at 78-79, 894 P.2d at 315. After analyzing this precedent, the

*McMahon* Court concluded that,

> [t]hese cases demonstrate a trend that improper comments by prosecutors or prospective jurors about the defendant or about the evidence, are not grounds for a mistrial [or a new trial] if the trial judge instructs the jury to disregard the questionable comment and if the court is satisfied that the juror can lay aside a fixed opinion and render a verdict solely on the evidence presented.

*McMahon,* 271 Mont. at 79, 894 P.2d at 316.

¶13    In *State v. Hagen* (1995), 273 Mont. 432, 903 P.2d 1381, Hagen argued that he was denied effective assistance of counsel when his trial counsel failed to object to a line of questions during voir dire which referred to Steve Jennette (Jennette), a witness who was at the Hagen residence at the time of the shooting but not called at trial to testify. During questioning of a prospective juror, the juror stated that he knew Jennette and had counseled Jennette after the shooting. The prospective juror stated that he had received "first hand" information concerning the shooting from Jennette during the counseling sessions. *Hagen,*

6

273 Mont. at 441, 903 P.2d at 1387. This Court distinguished *McMahon* from *Hagen*. In *Hagen*, no evidence concerning the substance of Jennette's conversations with the prospective juror was presented. During questioning, the prosecution elicited information that the juror knew Jennette and had discussed the shooting with him, but no facts pertaining to the incident were disclosed. In *McMahon*, several jurors made comments concerning the defendant's poor character in the presence of the entire jury panel. We concluded in *Hagen* that defense counsel's performance was not deficient because of his failure to object. *Hagen*, 273 Mont. at 441, 903 P.2d at 1387.

¶14 Scrutinizing the comments at issue in the present case and set forth above, we conclude that the comments did not relate to Wright's character and, as a result, they did not constitute comments so egregious as to be incurable by the District Court's admonishment to the jury to decide the case based only on the evidence presented during trial. The extraneous information given by Goggins did not rise to the level of egregiousness contemplated by this Court in *McMahon*. The jury panel could surmise from Goggins' remarks only that Wright had, at most, been charged with a similar crime in the past, not that he had pled guilty or been convicted of a similar crime. While Goggins' remarks were improper, the District Court's inquiry was sufficient to show the comments did not prejudice the other members of the venire panel. The District Court correctly dismissed Goggins from the panel and specifically questioned the remaining members of the panel about Goggins' statements and their ability to fairly and impartially assess the case at hand. The District

7

Court determined the remaining members of the jury panel had not been "poisoned," and stated:

> The trial court has the ability to look into the eyes of each member of the jury panel, and to consider their responses in the context of the courtroom. After dismissing the juror, the court determined that the remaining panel could render a fair and impartial decision, and that the defendant was not prejudiced by Prospective Juror No. 7's comments. This was further confirmed by the answers to questions posed by defense counsel concerning this matter.

¶15 Relying on *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204,[1] Wright argues that the alleged error during the jury selection process in this instance requires an automatic reversal of his conviction. In *LaMere*, this Court distinguished trial error and structural error. Trial error includes error which occurs during the presentation of the case to the jury. *LaMere*, ¶ 47. Conversely, structural error affects the framework within which a trial proceeds, rather than simply an error within the trial process itself, and is presumptively prejudicial. *LaMere*, ¶ 48. The *LaMere* Court held that a violation of the jury summoning statutes was a structural error which required a new trial. *LaMere*, ¶ 75.

¶16 Although Wright's interpretation of *LaMere* is correct, it is necessary for this Court to apply the *LaMere/Van Kirk* analysis only if we determine an error occurred in the first instance. Because we have rejected Wright's argument that the District Court erred in denying his motions to strike the panel and to grant a new trial, the structural error analysis is not necessary for resolution of this matter.

---

[1]Following the submission of briefs in this matter, the Court decided *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, which incorporated and furthered the *LaMere* analysis discussed herein.

¶17 The decision to grant or deny a motion for a new trial is within the sound discretion of the trial judge. *Gambrel*, 246 Mont. at 91, 803 P.2d at 1076. We will not disturb that decision absent a showing of abuse of discretion, *McMahon*, 271 Mont. at 78, 894 P.2d at 315, and we find the actions of the District Court here were sound. We hold that the District Court did not abuse its discretion by denying Wright's motions to strike the entire venire panel and to grant a new trial. We affirm.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9