FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8: 39

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43829-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| LISA ANN FLAMMINI, | |
| Appellant. | |

BJORGEN, J. — Lisa Flammini appeals from her convictions for second degree burglary and two counts of bail jumping, arguing that the State failed to present sufficient evidence to support them. She also argues that the prosecutor engaged in misconduct during closing argument and that the trial court erred in imposing a $745.25 jury demand fee. We affirm her convictions but remand for correction of her sentence.[1]

## I. SUFFICIENCY OF THE EVIDENCE

Evidence is sufficient if, when viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas,* 119 Wn.2d at 201.

---

[1] A commissioner of this court initially considered Flammini's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

A.  Second Degree Burglary

On the afternoon of September 12, 2011, Cathy Ramirez saw an unfamiliar sport utility vehicle had backed up to the garage of her neighbor's house. She saw a woman sitting in the vehicle and a man knocking at the neighbor's door and then looking in the windows. She wrote down the license plate number of the vehicle. While doing so, she noticed that the woman had something like a cell phone or walkie-talkie in her hand, and that when she noticed Ramirez looking at her, she put the item in front of her face. About five minutes later, the man walked up to the passenger side of the vehicle, opened it and had a conversation with the woman. He then got in the vehicle and it left.

When Ramirez's neighbor, Jamie Wilder, returned home, Ramirez told her what had happened. Wilder called the police and noticed damage to a door to her garage. Her husband, Daniel, returned home and found that items in the garage had been piled near the door "like it was going to be moved from that spot to somewhere else." Report of Proceedings (RP) (July 30, 2012) at 85. Neither Wilder had given anyone permission to be in their house that day. Ramirez gave the police a statement.

Based on Ramirez's information, police identified the vehicle and went to the address where it was registered. Chad Krizan, who matched the identification given by Ramirez, opened the door. Police detained Krizan. Flammini came out and agreed to speak with the police. She said she and Krizan had gone to Fred Meyer and denied that they had been at the Wilder residence. She "seemed extremely nervous." RP (July 30, 2012) at 107. When brought to the scene, Ramirez identified Krizan and Flammini as the man and woman she saw at the Wilder's house.

2

Krizan was arrested and pleaded guilty to attempted burglary of the Wilder's house. He testified that Flammini was in the vehicle when he backed it into the Wilder's driveway and that she stayed in the vehicle while he kicked in the door to the garage, entered it and piled items near the door. He said that he got back in the vehicle and drove away after he noticed Ramirez watching him. He denied that Flammini knew that he was going to try to burglarize the Wilder house or that he had done so. In calls recorded by the jail where he was detained, however, he told Flammini, "I'm just going to take this f****** charge for you." RP (July 31, 2012) at 179. He also told her that "I'm gonna give a statement to get you off this s***" and that he was going to say that she "had no idea that anything ever was supposed to go down." RP (July 31, 2012) at 135, 151. And in another call recorded from the jail, when his sister told him Flammini "was just as much at fault as you," he replied, "[Y]eah." RP (July 31, 2012) at 182. But at trial, he said Flammini "didn't know what the f*** was going on." RP (July 31, 2012) at 189.

In order for the jury to find Flammini guilty as an accomplice to Krizan's admitted burglary of the Wilder's house, the State had to present sufficient evidence that she aided him in planning or committing it. RCW 9A.08.020(3)(a)(ii). She contends she was merely present at the scene of the burglary, which is not sufficient evidence of accomplice liability. *In re Wilson,* 91 Wn.2d 487, 492, 588 P.2d 1161 (1979); *State v. McDaniel,* 155 Wn. App. 829, 863, 230 P.3d 245, *review denied,* 169 Wn.2d 1027 (2010). But the State presented evidence that (1) she was sitting behind the wheel of the vehicle after it had backed into the Wilder's driveway, (2) when she noticed Ramirez looking at her, she held something in front of her face, and (3) she was extremely nervous when denying having been at the Wilder's house. Further, the jail recordings

3

are evidence of her knowledge of the burglary. The State presented sufficient evidence for the jury to find her guilty as an accomplice to second degree burglary.

B.    Bail Jumping

On December 28, 2011, Flammini was in court for a pretrial hearing. The court ordered her to appear for another hearing on January 11, 2012. She declined to sign the order continuing the pretrial hearing. She did not appear on January 11, 2012, and a bench warrant was issued. She recalled having been ordered to appear but said she was unable to do so because of electricity problems.

On May 9, 2012, Flammini was back in court for a pretrial hearing. The court set over the hearing to May 16, 2012 and ordered her to appear then. She again declined to sign the order continuing the pretrial hearing. But she failed to appear on May 16, 2012, and a bench warrant was issued. She acknowledged knowing of the May 16, 2012 hearing date and said she failed to appear because it slipped her mind.

In order to find Flammini guilty of bail jumping, the State had to prove beyond a reasonable doubt that she had "been released by court order . . . with knowledge of the requirement of a subsequent personal appearance before" the court and then failed to appear. RCW 9A.76.170(1). Flammini argues that there was no evidence that she had been "released by court order." Br. of Appellant at 8. But the State presented evidence that Flammini was allowed to leave the court after being informed of the next appearance date. That is sufficient evidence of having been "released by court order." The State presented sufficient evidence for the jury to find her guilty of bail jumping on both January 11, 2012 and May 16, 2012.

## II. PROSECUTORIAL MISCONDUCT

In addressing the court's reasonable doubt instruction during closing argument, the prosecutor argued as follows:

> [E]verybody sees it in different court cases or you see it on TV. They'll say, well, I mean I listened to all the evidence, and I really think this guy did it. Like, I really think that he did whatever crime he was charged with, but they just didn't prove it to me. Well, my response to that is, if you think that, if you walk out of the door and you think, I really think that guy did it, then I have proven it to you beyond a reasonable doubt. Because if you don't think that, you would walk out and go, I don't know. I just don't think he did it. But if you walk out of here saying "I really think she did that," then I have proven it to you beyond a reasonable doubt. Because you have an abiding belief in the truth of the charge.
>
> When you say, "I just don't think they proved it," you are holding the State to an inappropriate standard. That standard would be beyond a reasonable doubt – or beyond a shadow of a doubt, not beyond a reasonable doubt. This is the standard you've been given.

RP (Aug. 1, 2012) at 394-95.

Flammini interprets this argument as telling the jury that in order to find her not guilty, it would have to think that she did not commit the crime. This, she contends, eliminated the possibility that the jury might conclude that the State had not proven beyond a reasonable doubt that she committed the crime. The prosecutor's argument improperly minimized the burden of proof. But where, as here, the defendant does not object during the closing argument, a prosecutor's inappropriate argument does not constitute reversible prosecutorial misconduct unless the argument is "'so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" *State v. Dhaliwal*, 150 Wn.2d 559, 578, 59 P.3d 432 (2003) (quoting *St. v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). The impropriety in the prosecutor's argument in this

No. 43829-1-II

case could have been neutralized by a curative instruction. Therefore, Flammini does not demonstrate that the prosecutor committed misconduct warranting reversal of her convictions.

### III. JURY DEMAND FEE

Finally, Flammini argues that the trial court erred in imposing a $745.25 jury demand fee because RCW 36.18.016(3)(b) limits that fee to $250 for a 12-person jury. The State responds that Flammini should not be allowed to raise this issue for the first time on appeal, RAP 2.5(a), but agrees that the jury demand fee should have been $250. We elect to allow Flammini to raise this issue for the first time on appeal, in the interests of justice. RAP 1.2(c); *State v. Hathaway*, 161 Wn. App. 634, 651-52, 251 P.3d 253 (2011). We agree that the $745.25 jury demand fee exceeds the limit imposed by RCW 36.18.016(3)(b) and remand Flammini's sentence for correction of that fee. *Hathaway*, 161 Wn. App. at 652-53.

We affirm Flammini's convictions but remand for correction of her sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.

6